NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0623n.06

Case No. 08-2382

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 26, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CHARLES E. ARMSTRONG, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge; ROGERS and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. Charles Armstrong, a federal criminal defendant, appeals his conviction for possession with intent to distribute cocaine base, carrying a firearm during a drug trafficking crime, and possession of a firearm by a felon. We AFFIRM.

**I.**

On May 4, 2007, Michigan State Police Troopers Michael Roth and Robert Mossing identified a Ford pick-up truck with an expired license plate and conducted a routine traffic stop. Defendant Armstrong was driving the truck, and one Ricky Harvey was the only passenger.

Trooper Mossing approached the driver side and Trooper Roth approached the passenger side. When Armstrong could not produce a driver's licence, Trooper Mossing ordered him to exit the truck. Trooper Roth shined a flashlight through the passenger side window and saw a gun and narcotics on the floor on the driver's side. Trooper Roth then ordered Harvey out of the truck.

The troopers recovered the gun — a semi-automatic .45 handgun, loaded, with one round in the chamber — and the narcotics — powdered cocaine base totaling 35.59 grams, separated into several baggies, inside a larger bag. There were no fingerprints on the gun or the bags of drugs. Trooper Mossing searched Armstrong but did not discover any contraband on his person. Trooper Roth searched Harvey and seized a crack pipe and a baggie containing 6.4 grams of marijuana.

The federal grand jury indicted Armstrong on three counts: one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1); one count of carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Armstrong entered a plea of not guilty, and the parties prepared for a jury trial. Armstrong's defense was that the drugs and gun were not his, but instead belonged to the passenger, Ricky Harvey.

Prior to trial, Armstrong's counsel filed a trial brief, in which he proposed — among other things — to introduce evidence of prior similar acts by Ricky Harvey, including certified copies of three separate criminal convictions in which Harvey had "dropped" illegal drugs when the police approached, as well as testimony by the officers involved in those incidents. The government moved *in limine* to exclude all such evidence and the district court heard argument on the motion. Armstrong's counsel argued that the evidence was admissible under Federal Rule of Evidence 404(b) and his constitutional right to present a defense. But the district court, relying on *United States v. Lucas*, 357 F.3d 599 (6th Cir. 2004), granted the motion and excluded the evidence.

At trial, the Government presented Troopers Roth and Mossing, and a Mt. Morris (Mich.) Township Police Officer named Donald Urban. Ricky Harvey did not testify. The defense presented Armstrong, who testified that neither the gun nor the drugs were his and that, just before the Troopers approached the truck, Harvey reached inside his jacket and dropped something onto the floor of the truck. The defense also presented defendant's girlfriend, Yolanda Suarez, who offered some background and character evidence; and Federal Defender's Office investigator Cameron Henke, who had inspected the truck and testified that a person sitting in the driver's seat would not be able to see the gun or drugs on the driver's side floor due to the seat's blocking the view.

The jury convicted Armstrong on all three counts. The district court sentenced Armstrong to 78 months in prison on Count One, 60 months consecutive on Count Two, and 60 months concurrent on Count Three, for a total of 138 months. Armstrong timely appealed.

## II.

On appeal, Armstrong challenges his conviction on two bases. He first claims that the district court erred by excluding the proffered evidence of Harvey's other similar acts, in contravention of Federal Rule of Evidence 404(b) and his constitutional right to present a complete defense. This court reviews a district court's evidentiary rulings for an abuse of discretion, and reviews an appellant's claimed violation of a constitutional right *de novo*. *Lucas*, 357 F.3d at 606.

Armstrong also claims that the evidence was insufficient to sustain the conviction because the government did not charge or show that the case involved "crack" cocaine, as — he argues — is now required by *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009). Typically, we review *de novo* the sufficiency of the evidence to sustain a conviction, *see United States v. Gunter*, 551 F.3d

3

472, 482 (6th Cir. 2009), but Armstrong did not raise this claim at trial, and his basis for the claim (*Higgins*) was not decided until after his conviction. Therefore, we review this claim for plain error. *See* Fed. R. Crim. Pro. 52(b); *United States v. Marcus*, 560 U.S. --, 130 S. Ct. 2159, 2164 (2010) (holding that "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings" (quotation and editorial marks omitted)).

## A.

"Evidence of other . . . acts is not admissible . . . to show action in conformity therewith." Fed. R. Evid. 404(b). There are, however, certain identified exceptions, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. When evidence is offered to prove an exception, "the rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403." *See* Fed. R. Evid. 404, Advisory Comm. Notes, Note to Subdivision (b) (1972 Proposed Rules).

In *Lucas*, 357 F.3d at 605, we considered the concept of "reverse 404(b)" evidence, "in which the evidence of a prior act by another is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." We reasoned that "prior bad acts are generally

4

not considered proof of *any* person's likelihood to commit bad acts in the future and that such evidence should demonstrate something more than propensity." *Id*. (emphasis in original). Therefore, we held that the Rule 404(b) analysis applies even "in cases where such evidence is used with respect to an absent third party, not charged with any crime." *Id*. at 606.

The district court analyzed Armstrong's claim under *Lucas* and concluded "that Armstrong has not met his burden of establishing that any of th[e] exceptions to Rule 404(b) apply to this case." Consequently, the district court granted the government's motion *in limine* and excluded any evidence of Harvey's other similar acts of dropping illegal drugs when the police approached.

Armstrong argues that the district court misapplied *Lucas*, and points to a bit of *dictum*, in which the panel opined about the "knowledge and intent" exceptions to Rule 404(b):

> If, instead, it w[ere] shown that [the absent third party] had borrowed someone else's car in which to do the prior drug deal [as Lucas claims happened here] or if he had packaged the cocaine in the same way and had left it under the passenger's seat in the same way, the evidence of his prior drug deal might have been sufficiently probative, but the simple fact that he sold cocaine before is only minimally relevant.

*Lucas*, 357 F3d at 606. Armstrong argues on appeal, based on the foregoing, that:

> [T]he proposed testimony is admissible for a proper purpose, i.e., identity as in the *Lucas* example above. Ricky Harvey had, on three separate occasions, dropped drugs upon being approached by the police — just as [Armstrong] alleges he did here. The facts of the instant case parallel the modus operandi that Harvey had demonstrated repeatedly in the past. [Armstrong] should have been permitted under Rule 404(b) to present the officers' testimony to this effect.

Appellant's Br. at 16 (footnote omitted, underlining in original).

Despite his invocation of the word "identity" (in his misunderstanding of the *Lucas* court's topic in the cited *dicta*), identity was not at issue here — Armstrong does not claim he was

5

misidentified, nor does he claim that the government misidentified Harvey. As the government argues on appeal, "[Armstrong]'s attempt to admit evidence that Harvey had dropped drugs was not offered to prove Harvey's identity, but rather that Harvey did it before and therefore when confronted by police herein he did it again (*modus operendi*)." Appellee's Br. at 14-15. To the extent Armstrong offers evidence of prior acts to demonstrate that Harvey, not Armstrong, possessed the contraband, the prior acts he seeks to introduce are too generic. To qualify as *modus operandi* evidence, the similarity between the prior act and the charged offense must rise to the level of a "signature," or a "device so unusual or distinctive as to be like a signature." *United States v. Hamilton*, 684 F.2d 380, 384 (6th Cir. 1982); *see, e.g.*, *United States v. Mack*, 258 F.3d 548, 553-54 (6th Cir. 2001) (finding that the use of a ski mask with a hooded sweatshirt and the method of "burst[ing] into the bank and "leap[ing]" over the teller counter constituted a signature). But dropping contraband, like fleeing the police, is typical of nearly every criminal (who has something to hide) and is not sufficiently "unusual or distinctive" to constitute a signature. *See also United States v. Thomas*, 321 F.3d 627, 635 (7th Cir. 2003) (holding that dropping a handgun and fleeing on foot upon seeing the police was "garden variety" conduct inadmissible under Rule 404(b)).

The district court and government are correct that Armstrong offers this evidence only to prove propensity: Harvey did it before and was therefore more likely to have done it again here. Or, in Armstrong's own words: "Ricky Harvey had, on three separate occasions, dropped drugs upon being approached by the police — just as [Armstrong] alleges he did here." Appellant Br. at 16. But

propensity evidence is not admissible under Rule 404(b), and the district court was properly within its discretion to exclude this evidence on this basis pursuant to *Lucas*.[1]

Armstrong argues, in the alternative, that exclusion of this evidence violated his constitutional right to present a complete defense even if the evidence was inadmissible under Rule 404(b). We rejected this same argument in *Lucas*, holding that "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *Lucas*, 357 F.3d at 606. Therefore, on its face, this argument is meritless.

But Armstrong cites *Holmes v. South Carolina*, 547 U.S. 319 (2006), for the proposition that he is constitutionally entitled to present a complete defense. *See* Appellant Br. at 16.[2] Because the Supreme Court issued *Holmes* after this court's decision in *Lucas*, Armstrong implies but does not argue expressly that *Holmes* might have overruled *Lucas*'s reasoning or holding. That would be incorrect. We have reaffirmed *Lucas* in recent opinions. *See, e.g.*, *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) ("What was true in *Lucas* is true today."); *United States v. Clark*, 377 F. App'x 451, 460 (6th Cir. 2010); *see also Wynne*, 606 F.3d at 872, 875 (Martin, J., concurring) (writing separately "because I believe that the *Lucas* opinion was wrongly decided" and "but for *Lucas*, I would find that the evidence was excluded in violation of Wynne's constitutional rights," but

---

[1] To be sure, in *United States v. Allen*, 619 F.3d 518, 523-24 (6th Cir. 2010), we allowed the government to introduce *modus operandi* evidence under somewhat similar circumstances. But courts of appeal do not decide evidentiary questions in the first instance. The point of abuse-of-discretion review is to give latitude to district courts to make a range of decisions when admitting evidence, even decisions that do not necessarily square with the precise contours of a ruling issued by a fellow trial judge. Nor at any rate is it clear that our decision in *Allen* on this point was a holding, as the court began its opinion by saying that "any potential error was clearly harmless." *See id*. at 523.

[2] Armstrong also relies on *Gagne v. Booker*, 596 F.3d 335 (6th Cir. 2010), to support this proposition, but *Gagne v. Booker* has since been vacated for *en banc* rehearing, 606 F.3d 278 (6th Cir. 2010).

concluding that "this panel is bound by the decisions of a prior panel, no matter how illogical, [so] I must concur"). Therefore, Armstrong's constitutional argument is untenable.

**B.**

Armstrong also claims that the evidence was insufficient to sustain the conviction because the government did not charge or show that the case involved "crack" cocaine, as — he argues — was then required by *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009). In *Higgins*, 557 F.3d at 392, 395, we held that "crack cocaine [is] a specific form of cocaine base," and that "the phrase 'cocaine base' in [21 U.S.C.] § 841 means 'crack cocaine,'" not simply any type of cocaine base. Therefore, "under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)], before the enhanced penalties of § 841 can apply, the indictment must charge and the jury must find beyond a reasonable doubt that the defendant committed a crime involving *crack* cocaine" not merely *cocaine base*. *Id*. at 395-96 (emphasis added). The Supreme Court has since overruled the foregoing reasoning and held that "cocaine base" in 21 U.S.C. § 841 means not just "crack cocaine" but any cocaine in its chemically basic form. *DePierre v. United States*, 564 U.S. --, 131 S. Ct. 2225, 2231-32 (2011).

In any event, Armstrong is mistaken and *Higgins* would not apply here, even on its own terms. Armstrong points out that his indictment charged only "cocaine base," the court instructed the jury only as to "cocaine base," and the jury's verdict form included only "cocaine base" — crack was not specified in any of these charges. Armstrong argues, pursuant to his reading of *Higgins*, that the evidence was insufficient to sustain the conviction under § 841 (and the other counts derivatively) because there was no charge or showing that the case involved "crack" cocaine.

8

Armstrong's reading of *Higgins* is incorrect — *Higgins* addresses only the "enhanced penalty" aspect of § 841's sentencing provisions, not the criminality provisions of § 841 generally. The indictment charged him with possession of "cocaine base," the court instructed the jury to convict him on a finding that he possessed "cocaine base," and the jury's verdict form demonstrates that the jury did convict him for possessing "cocaine base." Therefore, the jury properly convicted him of possession with intent to distribute cocaine base and he could be sentenced accordingly. *Higgins* proscribes sentencing under the enhanced penalties for crack cocaine, but the court did not sentence Armstrong under those enhanced penalties, nor does Armstrong claim or even suggest that it did. In fact, Armstrong has not offered any challenge whatsoever to his sentence in this appeal.

## III.

Because Armstrong cannot demonstrate that the district court erred by excluding evidence or that his conviction was improper under the current law, we **AFFIRM** the district court.