**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0559n.06

**Case No. 10-1399**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 30, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| v. | ) | **COURT FOR THE EASTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| RAYMOND FRANK JOSEPH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:  BATCHELDER, Chief Circuit Judge; COLE and COOK, Circuit Judges.**

**ALICE M. BATCHELDER, Chief Judge.**  Raymond Joseph appeals his conviction, claiming that the court and his attorney deprived him of a fair trial.  We affirm the conviction.

**I.**

Raymond Joseph owned several businesses, at least in name.  He would befriend wealthy investors and solicit loans for business ventures.  Joseph presented himself as an accomplished investor; he lived in a three-million-dollar home in an affluent suburb, dressed exceptionally well, drove expensive cars, and boasted that he had $30 to $40 million in bonds invested overseas.  Joseph sought and received hundreds of thousands of dollars from investors by assuring repayment on specific dates and promising high interest rates.  At times, Joseph signed promissory notes.  But Joseph actually used the money to repay former investors or pay his own personal expenses.

Eventually, the IRS discovered that Joseph (and his businesses) had reported little to no income for tax years 1990 to 2007, yet during those same years he deposited, withdrew, and spent

millions of dollars from numerous bank accounts held in his and his businesses' names. The government indicted Joseph on 36 counts of wire fraud, transporting stolen money or property, and engaging in monetary transactions in criminally derived property, stemming from his ponzi scheme.

The case was tried to a jury, and the government sought to prove that Joseph had defrauded four particular victims of over $2 million. Joseph argued that he did not defraud anyone, but had simply received personal loans, and failure to repay a loan is not criminal. The jury convicted him on all counts, and the court sentenced him to 66 months in prison and $2,208,000 restitution.

## II.

Joseph raises several claims on appeal, all of which contest the legitimacy of his jury trial and the validity of his conviction. We address each in turn and find no merit to any of them.

### Jury Instruction

Joseph contends that the district court erred because it failed to instruct the jury on Counts 5 through 13. Because Joseph did not raise this issue at trial, we review this claim for plain error. *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009). "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (quotation and editorial marks omitted). Of the 36 total counts, Counts 5-13, 21-33, and 35-36 were all violations of 18 U.S.C. § 1957(a) (engaging in monetary transactions in criminally derived property). When the district court instructed the jury on the statutory offenses, it mistakenly omitted references to Counts 5 to 13, and cited only Counts 21 to 33 and 35 to 36. Nonetheless, the court informed the jury of the relevant considerations and the applicable law

regarding each statutory violation and provided the jury with a verdict form that listed all 36 counts and the statutory violation for each count. There is no basis to conclude that the court's omission of Counts 5 through 13 resulted in grave miscarriage of justice, or even any confusion at all.

Joseph contends that his trial counsel's failure to raise this issue to the district court renders counsel's assistance constitutionally ineffective. Counsel is constitutionally ineffective if his representation falls below an objective standard of reasonableness and the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Joseph cannot demonstrate any prejudice from this misstatement by the district court or his counsel's failure to raise it. Therefore, Joseph cannot demonstrate that his trial counsel was constitutionally ineffective on this basis.

### Other Acts Evidence

Joseph contends that the district court erred by allowing the prosecution to introduce evidence of his failure to file income tax returns, of other victims, and of his lavish lifestyle. We review the district court's rulings on the admissibility of evidence for abuse of discretion. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010). While evidence of other acts is not admissible to prove a defendant's character to show that a defendant acted in conformity with that character, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, [or] knowledge." Fed. R. Evid. 404(b)(2). The government introduced this evidence to show that Joseph did not have a legitimate source of income, yet presented himself as a successful, millionaire investor in order to defraud his victims. This evidence is indicative of Joseph's motive, opportunity, intent, plan, and knowledge. We have upheld the admission of such evidence in similar circumstances. *See, e.g.*, *United States v. Carter*, 969 F.2d 197, 201 (6th Cir. 1992); *United States*

3

*v. Cobbs*, 233 F. App'x 524, 539 (6th Cir. 2007). We cannot conclude that the district court abused its discretion by admitting this evidence for this purpose in this case.

**Defense Expert**

Joseph contends that the district court erred by denying his request for the appointment of an expert on ponzi schemes. We review the district court's ruling on the appointment of defense experts for abuse of discretion. *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002). Under 18 U.S.C. § 3006A(e)(1), the court must provide an indigent defendant with the requested expert "upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *Id*. Joseph made no such demonstration to the district court and, similarly, makes no such demonstration here. The government argued that Joseph solicited money with the promise that he would provide more money in return; that he did so by making pay-outs to earlier "lenders" with the "loans" received from subsequent "lenders"; and that this was a fraudulent enterprise (a.k.a., a ponzi scheme). Joseph argued that he merely solicited loans, without any associated promise or condition, and hence did not defraud anyone. He has not demonstrated how a ponzi-scheme expert was necessary to this (or any other) defense or how he was prejudiced by the denial of such an expert. We cannot conclude that the district court abused its discretion, given the paucity of Joseph's arguments in this court and the district court.

Joseph contends that his trial counsel's failure to pursue this request renders counsel's assistance constitutionally ineffective. But the record reflects that Joseph's attorney did file an ex parte motion for a ponzi-scheme expert, as was suggested by the district court, inasmuch as the

district court addressed the motion in open court and ultimately denied it. We cannot conclude that Joseph's attorney was ineffective for failing to do something which, it turns out, he did in fact do.

**Outside Testimony**

Joseph contends that the district court erred by admitting statements his lawyer made to the IRS during the IRS investigation because those statements were inadmissible hearsay. We review for abuse of discretion the district court's rulings on the admissibility of testimony on hearsay grounds. *United States v. Khalil*, 279 F.3d 358, 363 (6th Cir. 2002). A statement is not hearsay when that statement is offered against a party and "was made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C). An attorney acting under a properly executed power-of-attorney is authorized to make out-of-court admissions on behalf of his client, to the extent that those admissions are directly related to the management of the litigation at issue. *United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir. 1969). The government produced four IRS Power of Attorney Forms 2848 that Joseph signed, in which he authorized his attorney to speak on his behalf during the IRS investigation. The district court did not abuse its discretion here.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.